Filed 3/7/16  P. v. Furness CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DANIEL KENNETH FURNESS et al.,<br><br>     Defendants and Appellants. | H041252<br>(Monterey County<br>Super. Ct. No. SS1020202A & B,<br>SS111260A & B) |

## I.  INTRODUCTION

Defendants Daniel Kenneth Furness and Coleen Ann Gsell were convicted by plea of several offenses generally arising out of their operation of a construction business without a valid contractor's license and their failure to file proper tax returns.  In case No. SS102020A & B, defendants were placed on probation and ordered to pay restitution in the amount of $5,149,711.10 to the people with whom they had contracted while unlicensed.  In case No. SS111260A & B, defendants were placed on probation and ordered to pay restitution in the amount of $181,049 to the Franchise Tax Board.

On appeal, defendants contend that the trial court erred in awarding more than $5 million in restitution to the people with whom they had contracted, because only a small portion of that amount represents actual economic loss sustained by the victims.  Defendants also contend that the trial court erred in awarding tax penalties and/or

investigative costs as restitution to the Franchise Tax Board. Defendants further contend that the appellate waivers they entered as part of their plea agreements in each case do not bar their appeals challenging the restitution awards.

For reasons that we will explain, we determine that defendants' claims are not reviewable on appeal because of their waiver of appellate rights and their failure to obtain a certificate of probable clause. We will therefore dismiss each defendant's appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Informations*

In 2012, in case No. SS102020A & B (case 1), both defendants were charged by an amended information containing 177 counts, some of which were alleged against only one defendant. The allegations generally arose out of defendants' conduct while operating a construction and home improvement business without a valid contractor's license. Among other allegations, defendants offered false documents for filing in a public office, failed to file a return or supply information with the intent to evade taxes imposed under the Unemployment Insurance Code, and unlawfully engaged in various activities without a contractor's license. The amended information was later further amended to allege certain counts against defendant Gsell as misdemeanors rather than felonies, and to add two misdemeanor counts against her.

In case No. SS111260A & B (case 2), defendants were charged by an information containing 17 counts, some of which were alleged against only one defendant. Among other allegations, defendants caused the filing of false personal tax returns and false corporate tax returns for their business, "windowdesign,inc.," for several years. Defendants also allegedly caused false Form 1099s to be issued to workers of windowdesign, inc., and caused those workers to file false tax returns. The information was later amended to allege certain counts against defendant Gsell as misdemeanors rather than felonies.

2

**B.** *The Waiver and Plea Agreements*

Defendants Furness and Gsell each executed a written waiver of rights and plea agreement in each case. The four waiver and plea agreements (one by each defendant in each of the two cases) are identical in the following relevant respects.

### 1. Restitution provisions

First, the waiver and plea agreements contain several provisions regarding restitution. According to these provisions, defendants understood that they would "be ordered to pay restitution to those who suffered financially because of [their] conduct subject to a hearing and court order." Defendants also stipulated that they were jointly liable for restitution, that their cases involved victims who had suffered economic loss, and that pursuant to Penal Code section 1202.4, subdivision (f)[1] and other authority, the trial court would require them to "make restitution to the victims in an amount to be established by Court order, based on the amount of loss claimed by the victims or other showing to the Court, or by agreement of the defense and the [People], or if the amount of loss [could not] be ascertained at the time of sentencing, the restitution order [would] include a provision that the amount [would] be determined at the discretion of the Court."

The waiver and plea agreements further state as follows regarding restitution: "My attorney has advised and informed me of, and I have fully discussed with her, provisions of law relating to restitution, including but not limited to California Penal Code § 1202.4. *I accept, agree and stipulate to as a term of my sentence, as well as the full term of any probation and mandatory supervision period(s), that the Court is required to order restitution for victims, and that myself and my [codefendant] will be ordered to pay restitution* to victims of any and all crime charged in Case 1 and/or Case 2, *which will be determined by agreement with the [People] or by the Court at, after or upon a restitution hearing*. I accept, agree, recognize and stipulate that there is

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

3

no restitution ceiling, limit or restriction which has been represented or stated to me in this agreement or elsewhere, and the Probation Department, victims and the [People] may argue for whatever restitution they deem appropriate." (Italics added.)

## 2. Appellate waiver provisions

Second, the waiver and plea agreements contain several provisions regarding defendants' waiver of appellate rights. Relevant here, the waiver and plea agreements state: "*I agree not to appeal, attack or writ as to any issue of fact or of law, including but not limited to any issue relating to* charging, pleading, limitations, *my sentencing* (provided I am not sentenced to an amount of custody in state prison or county jail exceeding the amount stated in Paragraph 3), or my entry of No Contest pleas. I freely, voluntarily, intelligently and specifically *give up and waive any and all rights regarding both state and federal appeals, attacks and writs. This includes, but is not limited to, the right to appeal my conviction, the judgment*, any order previously issued by this Court, including any motion filed, made or raised by either myself or by any co-defendant or other party in Case 1 or Case 2, *and my sentencing* (provided I am not sentenced to an amount of custody in state prison or county jail exceeding the amount stated in Paragraph 3). . . . *I freely, voluntarily, intelligently and specifically give up and waive my right to appeal my sentence* (provided I am not sentenced to an amount of custody in state prison or county jail exceeding the amount stated in Paragraph 3). *I agree not to file any collateral attack on my sentence* (provided I am not sentenced to an amount of custody in state prison or county jail exceeding the amount stated in Paragraph 3) or on my conviction or No Contest pleas at any time in the future." (Italics added.)

Defendants also acknowledged in their written waiver and plea agreements that (1) they had adequate time to discuss their cases, the evidence, and the plea agreements with their attorneys, (2) they had read, or had read to them, the agreements, (3) they understood and agreed with the agreements, and (4) they understood each of the rights outlined in the agreements and gave up those rights.

4

Each defendant's trial counsel also signed a provision in the agreements stating that the attorney had reviewed the agreement with defendant, had explained each item in the agreement to defendant, had answered all of defendant's questions concerning the agreement, concurred in defendant's decision to waive rights and enter a plea, and believed defendant was doing so knowingly, intelligently, and voluntarily.

## C. *The Pleas*

In August 2012, in case 1, defendant Furness pleaded no contest to the following seven counts: two counts of procuring or offering a false instrument for filing in a public office (§ 115, subd. (a); counts 1 & 9), unemployment insurance tax evasion (Unemp. Ins. Code, § 2117.5; count 28), fraudulent use of a contractor's license (Bus. & Prof. Code, § 7027.3; count 53), misdemeanor contracting without a license (former Bus. & Prof. Code, § 7028, subd. (a); count 128), misdemeanor advertising for construction work without a contractor's license (Bus. & Prof. Code, § 7027.1, subd. (a); count 139), and misdemeanor charging an excessive down payment in a home improvement contract (Bus. & Prof. Code, § 7159.5, subd. (a)(3); count 163).

At the same hearing, defendant Furness pleaded no contest to the following two counts in case 2: conspiracy to file a false tax return (§ 182, subd. (a)(1); Rev. & Tax. Code, § 19705, subd. (a)(1); count 6), and conspiracy to aid or assist in the preparation of a false tax return (§ 182, subd. (a)(1); Rev. & Tax. Code, § 19705, subd. (a)(2); count 13).

Defendant Furness entered his pleas with the understanding that in each case he would receive felony probation with up to one year in jail as a condition of probation, and that the time could be served concurrently.

At the same hearing, defendant Gsell pleaded no contest to the following seven counts in case 1: misdemeanor unemployment insurance tax evasion (Unemp. Ins. Code, § 2117.5; count 29), misdemeanor fraudulent use of a contractor's license (Bus. & Prof. Code, § 7027.3; count 83), misdemeanor contracting without a license (former Bus. &

5

Prof. Code, § 7028, subd. (a); count 127), misdemeanor advertising for construction work without a contractor's license (Bus. & Prof. Code, § 7027.1, subd. (a); count 131), misdemeanor charging an excessive down payment in a home improvement contract (Bus. & Prof. Code, § 7159.5, subd. (a)(3); count 162), and two counts of misdemeanor false personation of another (§ 530; counts 178 & 179).

In case 2, defendant Gsell pleaded no contest to the following two counts: misdemeanor conspiracy to file a false tax return (§ 182, subd. (a)(1); Rev. & Tax. Code, § 19705, subd. (a)(1); count 6), and misdemeanor conspiracy to aid or assist in the preparation of a false tax return (§ 182, subd. (a)(1); Rev. & Tax. Code, § 19705, subd. (a)(2); count 13).

Defendant Gsell entered her pleas with the understanding that she would receive probation, that there was a one-year "lid" in each case, and that the time could be served concurrently. The remaining counts against each defendant were submitted for dismissal at the time of sentencing.

The trial court signed defendants' written waiver and plea agreements, finding that defendants "expressly, knowingly, understandingly, and intelligently" waived their constitutional and statutory rights; that defendants' pleas, admissions, and waiver of rights were freely and voluntarily made; defendants understood the nature of the charges and the consequences of the pleas; and that there was a factual basis for the pleas. Further, at the change of plea hearing, the trial court expressly found that defendants understood the possible penalties and consequences of his or her pleas, and that he or she knowingly, intelligently, and voluntarily waived each of his or her rights.

When the trial court raised the issue of scheduling a sentencing hearing, counsel for defendant Furness stated: "Before we proceed to sentencing, there is, as the Court knows, a big restitution issue. We would like to have the restitution hearing prior to sentencing so that the whole thing can be wrapped up at one time." The trial court eventually scheduled a hearing regarding restitution.

6

**D.** *The Restitution Hearing*

The prosecution filed a written brief seeking restitution in both cases. Among other arguments, the prosecution contended that neither defendants nor their businesses, including windowdesign, inc., had ever been licensed contractors, and that under Business and Professions Code section 7031 defendants were not entitled to retain any money for any construction or improvement work where a license was required. The prosecution argued that any homeowner who paid money to an unlicensed contractor had incurred an economic loss and was therefore entitled to restitution. The prosecution further contended that homeowner testimony was not needed at the restitution hearing, and that defendants' home improvement agreements with the victims were sufficient evidence.

The prosecution also argued that defendants conspired to file false income tax returns on behalf of themselves and their business, including by failing to report all income. The prosecution contended that defendants should be ordered to pay as restitution back income taxes, penalties, and interest, as well as the Franchise Tax Board's investigative costs.

On December 13, 2013, a hearing was held regarding restitution. Upon agreement of the parties, the hearing was conducted by a different judge than the one who was assigned to the case. The prosecution presented evidence regarding restitution, while defendants presented no evidence or witnesses. The matter was taken under submission.

A few days later, the judge who presided over the restitution hearing issued an order stating that the December 13, 2013 hearing was a "presentence preliminary restitution review hearing" rather than an actual restitution hearing because "all restitution orders must be made by the sentencing judge as part of her sentence and mandated conditions of probation." The judge stated that his comments were therefore "preliminary and advisory." The judge indicated that everyone who had contracted with defendants, who were unlicensed contractors, was entitled to restitution in the amount

that each person had paid to defendants. The judge further indicated that, because defendants underreported their income, they should pay as restitution additional taxes, penalties, interest, and the reasonable cost of investigation.

Defendant Gsell and the prosecution thereafter filed briefs regarding whether a victim had to be present at the December 13, 2013 restitution hearing in order to be entitled to restitution.

The prosecution subsequently filed a further brief in support of restitution. Among other arguments, the prosecution contended that specified amounts should be awarded as restitution to the victims who testified at the December 13, 2013 restitution hearing. The prosecution further contended that any other person who paid compensation to defendants as unlicensed contractors should be awarded that amount as restitution, which the prosecution estimated was approximately $4.9 million.

### E. *The Probation Reports*

The probation officer recommended that defendants be ordered to pay approximately $1.3 million in restitution to the victims who had requested a refund for work that defendants had conducted without a contractor's license. The probation officer also recommended that defendants pay restitution to all other people who paid defendants for work conducted while defendants were unlicensed contractors. The probation officer estimated this amount to be more than $3 million. The probation officer further recommended that defendants pay restitution of $181,049 to the Franchise Tax Board for additional taxes, penalties, interest, and investigative costs.

### F. *Sentencing*

The sentencing hearing was held on May 23, 2014. In case 1, the unlicensed contractor case, regarding defendant Furness, the trial court suspended imposition of sentence and placed defendant on probation for five years with various terms and conditions, including that he serve 365 days in jail, with one day of credit. Regarding defendant Gsell, the court suspended imposition of sentence and placed her on probation

for three years with various terms and conditions, including that she serve 365 days in jail, with one day of credit. The court ordered defendants jointly and severally liable for restitution in the amount of $5,149,711.10 to the victims with whom defendants had contracted while defendants were unlicensed contractors, regardless of whether those victims expressly requested a refund in connection with defendants' criminal cases.

In case 2, the false tax returns case, regarding defendant Furness, the trial court suspended imposition of sentence and placed defendant on probation for five years with various terms and conditions, including that he serve 365 days in jail, with one day of credit. Defendant Furness's jail terms in the two cases were ordered to run concurrent. Regarding defendant Gsell, the court suspended imposition of sentence and placed her on probation for three years with various terms and conditions. The court ordered defendants jointly and severally liable for restitution in the amount of $181,049 to the Franchise Tax Board. The remaining counts against defendants in the two cases were dismissed.

Each defendant filed a notice of appeal but did not obtain a certificate of probable cause.

### III. DISCUSSION

#### A. *The Parties' Contentions*

##### 1. Defendant Furness

Regarding case 1, the unlicensed contractor case in which the trial court awarded more than $5 million in restitution to people who had contracted with defendants, defendant Furness contends that the court erred in awarding all but $19,182.21 in restitution. He argues that "nearly all of the restitution ordered was for clients who suffered no economic loss from the work [he] performed at their homes," and therefore "[o]rdering full disgorgement of all money [he] ever earned was unauthorized and an abuse of the trial court's discretion."

9

Regarding case 2, the false tax returns case in which the trial court awarded $181,049 in restitution to the Franchise Tax Board, defendant Furness contends that the court erred in awarding more than $51,000 for tax penalties relating to his individual and corporate tax returns, and erred in awarding more than $28,000 for investigative costs, because both amounts are unauthorized. He also argues that, to the extent the court could have imposed the investigative costs as punishment rather as restitution for one of his convictions, such punishment was not set forth in his plea agreement and therefore imposition of the investigative costs would violate his plea agreement.

Defendant also contends that he did not forfeit his objections to the restitution award and that, to the extent his claims have been forfeited, his trial counsel rendered ineffective assistance.

Defendant Furness further contends that the appellate waivers he entered as part of his pleas "do[] not extend to matters left unresolved by the plea agreement, including the amount of restitution."

## 2. Defendant Gsell

Regarding case 1, the unlicensed contractor case in which the trial court awarded more than $5 million in restitution, defendant Gsell argues that the court erred in awarding all but $19,182.21 in restitution. Defendant Gsell argues that only those victims who testified or otherwise presented evidence at the restitution hearing regarding an economic loss were entitled to restitution in that identifiable amount, and that restitution should not have been awarded for all amounts that everyone else paid to defendants for construction or home improvement work.

Regarding case 2, the false tax returns case in which the trial court awarded $181,049 in restitution to the Franchise Tax Board, defendant Gsell argues that the court erred in awarding more than $28,000 for investigative costs. Defendant contends that, although investigative costs could have been imposed pursuant to Revenue and Taxation

Code section 19705, subdivision (a)(1), the court was not authorized to award such costs as part of a restitution award under section 1202.4, subdivision (f).

Defendant Gsell also contends that she did not forfeit her objections to the restitution award and that, to the extent her claims have been forfeited, her trial counsel rendered ineffective assistance.

Defendant Gsell further contends that the appellate waivers she entered as part of her pleas "did not waive her right to contest the amount of the restitution order."

### 3. Attorney General

The Attorney General contends that each defendant's plea bargain included an appellate waiver, and that the waiver encompasses each defendant's appeal regarding restitution. Further, any challenge to the portion of the plea bargain containing the appellate waiver is not reviewable because defendants did not obtain a certificate of probable cause. The Attorney General contends that defendants' appeals must therefore be dismissed. The Attorney General also argues that defendants' restitution claims are forfeited for failure to raise them below, that defendants are estopped from bringing the claims, and that the claims fail on the merits.

We determine that defendants' waiver of appellate rights and failure to obtain a certificate of probable cause are dispositive and therefore we consider those issues first.

### B. *Scope of Appellate Waiver*

"A defendant may waive the right to appeal as part of a plea bargain where the waiver is knowing, intelligent and voluntary. [Citation.]" (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815 (*Mumm*), citing *People v. Panizzon* (1996) 13 Cal.4th 68, 80 (*Panizzon*).) "[A] waiver that is nonspecific, e.g., 'I waive my appeal rights' or 'I waive my right to appeal any ruling in this case,' " is considered a general waiver. (*Panizzon*, *supra*, at p. 85, fn. 11.) "A broad or general waiver of appeal rights ordinarily includes error occurring before but not after the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future

11

error.  [Citation.]  Thus, a waiver of appeal rights does not apply to ' "possible future error" [that] is outside the defendant's contemplation and knowledge at the time the waiver is made.' [Citations.]" (*Mumm*, *supra*, at p. 815; accord, *In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1160 [a general waiver does not preclude attacks on subsequent errors that are unforeseen or unforeseeable at the time the waiver was made].)

In *Panizzon*, the California Supreme Court addressed the scope of a sentencing-specific appellate waiver and its effect on a defendant's right to appeal.  In *Panizzon*, the defendant pleaded no contest pursuant to a plea bargain that provided for a sentence of life with the possibility of parole, plus 12 years.  (*Panizzon*, *supra*, 13 Cal.4th at p. 73.)  In the written waiver and plea agreement, the defendant agreed that he was waiving his " 'right to appeal from the sentence [he would] receive in this case.' " (*Id.* at p. 82.)  The defendant later challenged the sentence on the ground that it was disproportionate to the sentences his codefendants had received after him, and that therefore his sentence constituted cruel and unusual punishment.  (*Id.* at pp. 74, 85.)  The defendant also argued that the sentencing error was unforeseen or unknown at the time of his plea and appellate waiver, and that such future sentencing error was beyond the scope of his waiver.  (*Id.* at p. 85.)

The California Supreme Court determined that defendant's claim fell within the scope of the appellate waiver and was not reviewable on appeal.  (*Panizzon*, *supra*, 13 Cal.4th at p. 89.)  The court explained:  "Not only did the plea agreement in this case specify the sentence to be imposed, but by its very terms the waiver of appellate rights also specifically extended to any right to appeal such sentence.  Thus, what defendant seeks here is appellate review of an integral element of the negotiated plea agreement, as opposed to a matter left open or unaddressed by the deal." (*Id.* at pp. 85-86.)  The court further stated that "both the length of the sentence and the right to appeal the sentence are issues that cannot fairly be characterized as falling outside of defendant's contemplation and knowledge when the waiver was made." (*Id.* at p. 86.)

12

The California Supreme Court distinguished the case before it with *People v. Sherrick* (1993) 19 Cal.App.4th 657, and *People v. Vargas* (1993) 13 Cal.App.4th 1653, where a "*general waiver* of the right to appeal, given as part of a negotiated plea agreement," was "not . . . construed to bar the appeal of sentencing errors occurring subsequent to the plea," because "the defendants in those decisions were attempting to appeal sentencing issues that were left *unresolved* by the particular plea agreements involved." (*Panizzon*, *supra*, 13 Cal.4th at p. 85, fn. omitted, first italics added.) As explained by the California Supreme Court, "[i]n *People v. Sherrick*, . . . the defendant was permitted to argue on appeal that the trial court utilized a patently erroneous standard in determining his ineligibility for probation where the plea agreement and waiver of appellate rights evidently contemplated no specific sentence or probation eligibility. Similarly, in *People v. Vargas*, . . . the defendant was not barred from challenging an alleged misapplication of conduct credits on appeal where the plea agreement and waiver of appellate rights apparently made no mention of conduct credits. In each of those decisions, the appellate court viewed the sentencing issue as not being within the contemplation and knowledge of the defendant at the time the waiver was made and so refused to extend thereto a general waiver of the right to appeal." (*Panizzon*, *supra*, at p. 85.)

Subsequently, in *People v. Buttram* (2003) 30 Cal.4th 773 (*Buttram*), the California Supreme Court considered the scope of a plea agreement and whether a certificate of probable cause was needed. In *Buttram*, the defendant entered his pleas and admissions in exchange "for an agreed maximum sentence, or 'lid' " of six years. (*Id.* at pp. 776, 777, italics omitted.) After the trial court imposed the maximum sentence of six years, the defendant argued on appeal that the court abused its discretion. The Court of Appeal dismissed the appeal for lack of a certificate of probable cause. The California Supreme Court ultimately determined that the defendant's appeal did not attack the validity of the plea and that no certificate of probable cause was required, because he

sought "only to raise issues reserved by the plea agreement, and as to which he did not expressly waive the right to appeal." (*Id.* at p. 787.)

Significantly, the absence of an appellate waiver was a fact that the California Supreme Court repeatedly referred to in the *Buttram* opinion. (*Buttram*, *supra*, 30 Cal.4th at pp. 776, 777-778, 785, 787.) The court observed that "[n]either the written change-of-plea form initialed and signed by defendant, nor any plea terms discussed in open court, specified that defendant was affirmatively waiving his right to appeal any sentencing issue that might otherwise properly arise within the negotiated maximum." (*Id.* at pp. 777-778, fn. omitted.) The court concluded that, "absent contrary provisions in the plea agreement itself, a certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence. Such an agreement, by its nature, contemplates that the court will choose from among a range of permissible sentences within the maximum, and that abuses of this discretionary sentencing authority will be reviewable on appeal, as they would otherwise be." (*Id.* at pp. 790-791.)

In a concurring opinion in *Buttram*, Justice Baxter, who also authored the majority opinion, stated that, "[a]t the outset, and most fundamentally, the parties to a plea agreement should, if possible, expressly negotiate and resolve the issue of appealability. A prime reason why we conclude here that [the defendant] may take his appeal without a certificate, and that the Court of Appeal must address it on the merits, is that [the defendant's] plea is silent on the appealability of the trial court's sentencing choice." (*Buttram*, *supra*, 30 Cal.4th at p. 791, italics omitted (conc. opn. of Baxter, J.).) Justice Baxter explained that if the defendant's "bargain had included an express waiver of appeal, a number of consequences would flow," including that "the express waiver of appeal would permit the appellate court to decline to address the defendant's claim on the merits . . . ." (*Id.* at pp. 792, 793 (conc. opn. of Baxter, J.).)

14

Here, in the case before us, the waiver and plea agreements expressly provided that defendants would be ordered to pay restitution. The agreement also expressly provided that the amount of restitution would be determined by agreement with the People, or by the court after a restitution hearing. Thus the parties clearly contemplated that the sentence or judgment would include an order to pay restitution in an amount to be determined.

Moreover, defendants' appellate waivers in the waiver and plea agreements were not general waivers, but specific waivers that applied to *any* direct or collateral attack on the sentence or judgment, which were expressly defined to include restitution. In particular, each defendant agreed as follows: "I agree *not to appeal*, attack or writ *as to any issue of fact or of law*, *including but not limited to any issue relating to . . . my sentencing . . . .* I freely, voluntarily, intelligently and specifically give up and *waive any and all rights regarding both state and federal appeals*, attacks and writs. This includes, but is not limited to, the right to appeal . . . the *judgment*, . . . and my *sentencing . . . .* I freely, voluntarily, intelligently and specifically give up and *waive my right to appeal my sentence . . . .* I agree not to file any collateral attack on my sentence . . . ." (Italics added.)

Regarding each defendant's agreement that restitution was a term of his or her sentence or probation, the waiver and plea agreements provide: "*I accept, agree and stipulate to as a term of my sentence*, *as well as the full term of any probation . . . period(s)*, that the Court is required to order restitution for victims, and that myself and my [codefendant] *will be ordered to pay restitution* to victims of any and all crime charged in Case 1 and/or Case 2, which will be determined by agreement with the [People] or by the Court at, after or upon a restitution hearing." (Italics added.) Defendants further understood that there was no "ceiling" or limit on the amount of restitution that the prosecution might seek.

15

Thus, in view of the express language in the waiver and plea agreements, the parties clearly contemplated that (1) defendants would be subject to a restitution order in in an amount to be determined, (2) the restitution order was a term of defendants' sentence or probation, and (3) defendants were waiving the right to appeal from the sentence or probation order/judgment (see § 1237, subd. (a) [a final judgment for purposes of appeal includes an order granting probation]; accord, *People v. Howard* (1997) 16 Cal.4th 1081, 1087) "as to *any* issue of fact or of law" (italics added).

Consequently, based on the express reference to restitution being a term of defendants' sentence or probation period and the specific waiver of "any issue of fact or of law" relating to defendants' sentence or order of probation/judgment, we believe the parties contemplated at the time defendants entered their no contest pleas that the waiver would apply to future error, including error with respect to restitution. (See *Panizzon*, *supra*, 13 Cal.4th at pp. 85-86; *Mumm*, *supra*, 98 Cal.App.4th at p. 815; *Buttram, supra,* 30 Cal.4th at pp. 791-793 (conc. opn. of Baxter, J.) [if the defendant's plea bargain had included an appellate waiver regarding sentencing, then the appellate court could have declined to address the defendant's claim that the trial court abused its discretion in imposing the negotiated maximum sentence].)

We are not persuaded by defendant Gsell's argument that restitution was determined at a hearing separate from sentencing, and that therefore her appellate waiver of sentencing issues does not apply to the restitution order. Although a restitution hearing was held before sentencing, the trial court did not actually order restitution until the sentencing hearing when the court granted probation. The restitution order was therefore part of the judgment and as we have explained, the appellate waiver expressly applies to sentencing and the judgment (order of probation).

We are also not persuaded by defendant Gsell's argument that, because the parties' waiver and plea agreements refer to the waiver of "previously issued" orders, the parties did not contemplate the waiver of future issues, such as the amount of restitution.

16

As we have explained, the agreements expressly refer to the waiver of the right to appeal sentencing issues and the judgment, which were events that had not yet occurred at the time the waiver and plea agreements were executed. The parties therefore clearly contemplated the waiver of future issues at the time the agreements were executed.

In sum, we determine that each defendant's appellate challenge to the restitution order is not reviewable on appeal because the terms of the plea bargain preclude any appeal regarding the restitution order. (See *Panizzon*, *supra*, 13 Cal.4th at p. 89; *Mumm*, *supra*, 98 Cal.App.4th at p. 815.)

## C. *Requirement of Certificate of Probable Cause*

Defendants' appellate waivers are contained in their written plea agreements. "It has long been established that issues going to the validity of a plea require compliance with section 1237.5. [Citation.]" (*Panizzon*, *supra*, 13 Cal.4th at p. 76.) Under section 1237.5, a defendant may not appeal from a judgment of conviction following a guilty or no contest plea unless the defendant files with the trial court a written statement "showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings," and the "trial court has executed and filed a certificate of probable cause for such appeal." (*Id.*, subds. (a), (b).) "The purpose for requiring a certificate of probable cause is to discourage and weed out frivolous or vexatious appeals challenging convictions following guilty and nolo contendere pleas. [Citations.]" (*Panizzon*, *supra*, at p. 75.) If a defendant fails to obtain a certificate when one is required, the defendant's claim is not reviewable on appeal. (*Id.* at p. 89.)

Two types of issues may be raised in an appeal from a guilty or no contest plea without a certificate of probable cause: (1) "[t]he denial of a motion to suppress evidence under Penal Code section 1538.5," and (2) "[g]rounds that arose after entry of the plea and do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(4)(A), (B); see *People v. Mashburn* (2013) 222 Cal.App.4th 937, 941-942 (*Mashburn*).)

17

"In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: 'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5. [Citation.]" (*Panizzon*, *supra*, 13 Cal.4th at p. 76.)

For example, "a challenge to a negotiated sentence imposed as part of a plea bargain is properly viewed as a challenge to the validity of the plea itself. Therefore, it [is] incumbent upon defendant to seek and obtain a probable cause certificate in order to attack the sentence on appeal." (*Panizzon*, *supra*, 13 Cal.4th at p. 79.) In *Buttram*, Justice Baxter explained in a concurring opinion that if a plea bargain includes an express waiver of appeal, then a certificate of probable cause is required to challenge either the sentence or the enforceability of the waiver. (*Buttram*, *supra*, 30 Cal.4th at pp. 792-793 (conc. opn. of Baxter, J.).) Thereafter, an appellate court, citing *Panizzon* and Justice Baxter's concurrence in *Buttram*, held that where the defendant's appeal challenged the validity of the appellate waiver in the plea bargain, the appeal was a challenge to the validity of the plea itself and a certificate of probable cause was required. (*Mashburn*, *supra*, 222 Cal.App.4th at p. 943.)

In this case, a certificate of probable cause is required for defendants' claims that attack the restitution orders, which were part of the sentences or orders of probation/judgments, because the claims constitute an attack on an express term of the plea agreement. (*Panizzon*, *supra*, 13 Cal.4th at p. 79; *Buttram*, *supra*, 30 Cal.4th at pp. 792-793 (conc. opn. of Baxter, J.); *Mashburn*, *supra*, 222 Cal.App.4th at p. 943.) The record reflects, however, that defendants did not seek and obtain a certificate of probable cause. We therefore determine that these claims attacking the validity of the appellate

18

waiver in the waiver and plea agreement are not reviewable on appeal. (*Panizzon*, *supra*, at p. 89.)

In sum, based on the language of the written agreements, we determine that defendants' waivers of the right to appeal their sentences and orders of probation/judgments include a waiver of the right to challenge the restitution orders on appeal. (See *Panizzon*, *supra*, 13 Cal.4th at pp. 85-86; *Mumm*, *supra*, 98 Cal.App.4th at p. 815; *Buttram*, *supra*, 30 Cal.4th at pp. 791-793 (conc. opn. of Baxter, J.).) Further, we determine that defendants' challenges to the appellate waiver are an attack on the validity of their plea. In the absence of a certificate of probable cause, defendants may not raise this issue on appeal. (*Panizzon*, *supra*, 13 Cal.4th at pp. 76, fn. 6, 89; *Buttram*, *supra*, 30 Cal.4th at pp. 792-793 (conc. opn. of Baxter, J.); *Mashburn*, *supra*, 222 Cal.App.4th at p. 943.) We will therefore dismiss the appeal of each defendant.

## IV. DISPOSITION

In case Nos. SS102020A & B and SS111260A & B, the appeal by defendant Daniel Kenneth Furness and the appeal by defendant Coleen Ann Gsell are dismissed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____
ELIA, ACTING P.J.



_____
MIHARA, J.