Filed 1/21/26  P. v. Vidrio CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN VIDRIO,<br><br>Defendant and Appellant. | F088274<br><br>(Super. Ct. No. F21902250)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  William Terrence, Judge.

Calvin J. Massey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Adrian Vidrio, appellant, was convicted of assault by means likely to produce great bodily harm, with a great bodily injury and gang enhancement pursuant to a plea

agreement. Vidrio was granted a certificate of probable cause as to the denial of his request for mental health diversion and regional center diversion and appeals on these issues. He further appeals the denial of his request to dismiss his strike prior during sentencing. We affirm.

## PROCEDURAL HISTORY

On March 17, 2021, the Fresno County District Attorney's Office filed a felony complaint charging Vidrio with assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4);[1] count 1), and battery with serious bodily injury (§ 243, subd. (d); count 2). As to both counts, the complaint alleged Vidrio committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)). The complaint also alleged Vidrio suffered one prior serious or violent felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).)

On December 21, 2022, Vidrio's counsel declared a doubt as to his mental competence, and the trial court instituted section 1368 proceedings. Vidrio was found to be competent on January 26, 2023.

On June 30, 2023, Vidrio filed a motion requesting mental health diversion pursuant to section 1001.36, subdivision (a). He argued he was diagnosed with stimulant use disorder in early remission and had a history of learning disabilities. On February 5, 2024, Vidrio orally requested "Regional Center Diversion" pursuant to sections 1001.20 through 1001.34. The People filed opposition to both requests.

The trial court denied Vidrio's mental health diversion request on October 13, 2023. The trial court further denied his regional center diversion request on March 14, 2024.

---

[1] Further undesignated statutory references are to the Penal Code.

2.

On April 17, 2024, in exchange for a seven-year maximum sentence, Vidrio pled no contest to count one, a violation of section 245, subdivision (a)(4), assault by means likely to produce great bodily injury, and admitted the section 186.22, subdivision (b)(1)(C) gang and section 12022.7, subdivision (a) great bodily injury enhancements. He also admitted his prior strike conviction.

On May 24, 2024, Vidrio moved for the trial court to dismiss his prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. On June 13, 2024, the trial court denied Vidrio's *Romero* motion and sentenced him to the low term of two years on count one, doubled, plus three years on the great bodily injury enhancement, for a total of seven years in prison.

Vidrio filed a timely notice of appeal on June 26, 2024, and sought a certificate of probable cause. The certificate was granted as to the trial court's denial of his request for diversion pursuant to sections 1001.20, 1001.35 and 1001.36, but denied as to the trial court's denial of his *Romero* motion.

## FACTUAL HISTORY[2]

On March 14, 2021, David A. was having a family barbeque at Kearney Park, when an SUV approached the area and began doing "donuts." David A. walked toward the SUV and spoke with the driver, later identified as Vidrio. David A. asked him to stop being dangerous around families, and Vidrio told David A. to "Fuck off" and said "It's all about [the] Bulldogs." Vidrio drove off, but David A. followed them through the park. After a few hundred yards, Vidrio cut David A. off and got out of the SUV with his passenger, Xzavier Vidrio. The three began fighting. Vidrio and Xzavier began punching David A., who fell to the ground. They continued to punch and kick David A. in the head, causing him to lose consciousness and begin convulsing. They fled when

---

[2] The facts of this case are summarized from the probation officer's report. Vidrio stipulated to a sufficient factual basis for the plea pursuant to *People v. West* (1970) 3 Cal.3d 595.

3.

David A.'s partner called 911. David A. suffered multiple facial fractures, nasal fractures, and a severe concussion with swelling to the entire right side of his face.

On March 15, 2021, Vidrio was apprehended and taken into custody. He admitted to punching David A. six to seven times and kicking him approximately three times in the face after he fell to the ground. Vidrio said, "I was just angry bro. I just flipped out, I guess. I know it wasn't right, but I seen my nephew get punched so it's like damn a different story."

## **DISCUSSION**

### **I.    The Trial Court Did Not Abuse Its Discretion Denying Vidrio's Request For Mental Health Diversion.**

Vidrio argues the trial court abused its discretion when it denied his request for mental health diversion. He argues that substantial evidence does not support a finding that he posed an unreasonable danger to public safety, and the People did not present evidence that he was likely to commit a super-strike offense. We find no abuse of discretion.

### **A. Legal Standard**

Section 1001.35 sets out the purpose of mental health diversion, as promoting the following:

> "(a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.

> (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.

> (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders."

4.

Section 1001.36 grants a trial court discretion to grant pretrial diversion to eligible defendants who have been diagnosed with a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), and whose mental disorder was a significant factor in the commission of the charged offense.

When determining whether a mental disorder was a significant factor in the charged offense, "[i]f the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense. A court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1001.36, subd. (b)(2).)

A defendant is suitable for diversion when the opinion of a qualified mental health expert is that the defendant's symptoms would respond to mental health treatment, the defendant consents to diversion, the defendant agrees to comply with treatment as a condition of diversion, and the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§§ 1001.36, subds. (c)(1)–(4).)

Section 1170.18, subdivision (c) defines "unreasonable risk of danger to public safety" to mean an unreasonable risk that the petitioner will commit a new felony within the meaning of section 667, subdivision (e)(2)(C)(iv). This includes any sexually violent offense, sexual assault or oral copulation with a child under the age of 14, any homicide offense, solicitation to commit murder, assault with a machinegun on a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony

5.

offense punishable in California by life imprisonment or death.  (§ 667, subd. (e)(2)(C)(iv)(I)–(VIII).)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence.  [Citations.]  A trial court has 'broad discretion to determine whether a given defendant is a good candidate for mental health diversion.'  [Citation.]  'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' "  (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.)

"Assuming the defendant is both eligible and suitable, the trial court must also be satisfied 'that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.'  [Citations.]  This is not an additional eligibility or suitability requirement the defendant must meet.  Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program."  (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892.)

"Finally, even where defendants make a prima facie showing that they meet all the express statutory requirements, the court may still exercise its discretion to deny diversion.  [Citations.]  But this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." '  [Citations.]  That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community.  Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain

6.

why diversion would not meet those goals." (*Sarmiento v. Superior Court, supra,* 98 Cal.App.5th at pp. 892–893.)

## B. Discussion

In his request for mental health diversion, Vidrio argued that he had been diagnosed with a qualifying mental health disorder and was not an unreasonable risk to public safety.

In opposition, the People argued that Vidrio was neither eligible nor suitable for diversion. With regards to eligibility, the People argued that Vidrio had only produced one recent psychiatric report, the competency evaluation from 2023, which diagnosed him with "stimulant use disorder, amphetamine-type substance, severe, in early remission." The report did not discuss whether the substance abuse disorder was a significant factor in the commission of the current offense.[3] With regard to suitability, the People argued that Vidrio had not provided an opinion from a qualified mental health expert that his mental health disorder symptoms would respond to mental health treatment. The People also argued, based on the facts of the current offense and his violent behavior at the slightest provocation, he poses an unreasonable risk to public safety.

Vidrio's prior strike conviction, from 2015, was for assault with a deadly weapon in violation of section 245, subdivision (a)(1), with a great bodily injury enhancement pursuant to section 12022.7, subdivision (a), for which he was sentenced to five years in prison. In his psychiatric evaluation in 2023, Vidrio stated that he was defending a family member and assaulted the victim with a machete.

---

[3] The report indicated that while Vidrio had a past history of abusing methamphetamine, "he has been clean and sober for some time, and shows no current evidence of psychosis." In contrast, in his statement to the probation officer, Vidrio said he was high on methamphetamine at the time of the offense.

7.

On October 13, 2023, the trial court denied Vidrio's request for mental health diversion with the following finding.

> "[U]ltimately we sort of separated the issues of eligibility and suitability. As to suitability, which I think the Court can best address because that's where our conversation was, the Court doesn't believe that the facts of this case and Mr. Vidrio's prior criminal history are an appropriate case for the supervision that we have on diversion. The Court was concerned about the nature of the offense, the injuries, again, prior criminal history, but the Court also did have concerns about the eligibility aspects in terms of information provided.
>
> But given that the Court made a determination that he was not suitable and that it's discretionary, the Court would make the finding that the interest of justice didn't – in the Court's mind, don't support the granting of diversion on this case. The Court will decline to grant diversion based on the lack of supervision and the Court's discretion for the particular circumstances. I'm not going to go through all the rest of it, which is – it's eligibility, for the purposes of our suitability discussion, which sort of just assume[s] that there may be information that would suggest that he was eligible, so the Court – and the Court can separate those issues – so the Court's denying it based on suitability."

Vidrio argues there is not substantial evidence to support a finding that there is an unreasonable risk of danger he would commit a super strike. He relies on the recently published case, *Gomez v. Superior Court* (2025) 113 Cal.App.5th 671 (*Gomez*).

In *Gomez*, the defendant and two accomplices robbed the victim while the victim was walking on the street. (*Gomez, supra,* 113 Cal.App.5th at p. 680.) While committing the robbery, one of the accomplices hit the victim in the back of the head with a metal object, causing the victim to sustain a puncture wound to his left shoulder, a two-inch laceration to the back of his head, and a three-inch laceration to his left wrist. (*Ibid.*) The defendant did not hit the victim, but was heard saying "get his ass, kill his ass." (*Ibid.*)

8.

The defendant filed a pretrial motion seeking mental health diversion and attached a crisis assessment completed by a senior mental health counselor, which identified an initial placement recommendation for treatment in an intensive outpatient setting as well as additional services. (*Gomez, supra,* 113 Cal.App.5th at p. 681.) The assessment identified a diagnosis of posttraumatic stress disorder, major depressive disorder, and polysubstance use disorder. (*Ibid.*) The defendant also agreed to intensive outpatient or residential substance use and prevention services and was referred to mental health services at a specified facility. (*Id.* at p. 682.)

In denying diversion, the trial court found the People had met their burden of clear and convincing evidence the mental health disorder was not a motivating, causal, or contributing factor in the commission of the charged offense. (*Gomez, supra,* 113 Cal.App.5th at p. 683.) The trial court also found the defendant posed an unreasonable risk to public safety despite having no criminal history and finally exercised its residual discretion to deny diversion due to the injuries suffered by the victim and the fact that the victim was in fear for his life. (*Id.* at p. 684.)

The appellate court disagreed and found the trial court had abused its discretion denying diversion. (*Gomez, supra,* 113 Cal.App.5th at pp. 689–690.) In particular, the appellate court noted the defendant had no criminal history and there was no evidence the defendant had previously been charged with a super-strike offense. (*Id.* at 690.) Likewise, the pending charge was not a super-strike offense. (*Ibid.*) The appellate court also found it was improper for the trial court to invoke the facts and circumstances of the robbery to exercise its residual discretion when those same facts had been considered under the unreasonable risk of dangerousness criteria of the statute. (*Id.* at p. 691.) "The trial court cannot invoke its residual discretion to create a lower standard for finding that the facts and circumstances of the robbery indicate diversion would not protect public safety." (*Ibid.*) "Although the trial court noted that it was 'not permitted to redefine

9.

public safety in a manner inconsistent with the Legislature's expressed intent,' that is in essence what the trial court did." (*Ibid.*)

This case is not comparable to *Gomez*. Even assuming eligibility, Vidrio had not provided the trial court an assessment or opinion of a qualified mental health expert that the symptoms of the mental health disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment, as required by section 1001.36, subdivision (c)(1)[4]. Thus, the trial court's denial based on concerns surrounding "supervision" was not an abuse of its discretion.

Likewise, substantial evidence supports the trial court's finding that Vidrio is not suitable for diversion due to an unreasonable risk of danger to public safety, as defined by section 1170.18. In *Gomez*, the defendant did not personally hit the victim and had no criminal history. In contrast, Vidrio has a criminal history and admitted his prior serious felony was due to attacking a victim in 2015 with a deadly weapon, a machete. In this case, Vidrio also personally beat the victim even after the victim was prone on the ground and only stopped when the victim's partner intervened and called 911. He did not stop when the victim lost consciousness or started convulsing and directed his punches and kicks at the victim's head. These facts constitute substantial evidence that Vidrio poses an unreasonable risk of committing a super strike if treated in the community, particularly a homicide offense, and the trial court did not abuse its discretion denying his mental health diversion request based on "suitability."

---

[4] A document from Fresno County Department of Behavioral Health, filed with the trial court on October 6, 2023, indicated that "[b]ased on information provided Mr. Vidrio would benefit most from intensive SUD treatment." The document did not indicate that his symptoms would respond to such treatment, only that such treatment was recommended.

## II. The Trial Court Did Not Abuse Its Discretion Denying Vidrio's Request for Regional Center Diversion.

Vidrio argues the trial court abused its discretion denying his request for regional center diversion, because he is eligible for diversion and agreed to a treatment plan which would have 24-hour supervision. He reiterated that he did not pose an unreasonable risk to public safety. We find the trial court did not abuse its discretion.

### A. Legal Standard

Regional center diversion is a diversion program available for individuals with developmental disabilities. (§ 1001.21.) Regional center diversion is comparable, but distinct from mental health diversion pursuant to sections 1001.35 and 1001.36. Once a request for regional center diversion is made, "[t]he court shall consult with the prosecutor, the defense counsel, the probation department, and the appropriate regional center in order to determine whether a defendant may be diverted pursuant to this chapter." (§ 1001.22, subd. (a).)

"After consideration of the probation department's report, the report of the regional center, the report of the prosecutor relating to the prosecutor's recommendation for or against diversion, the defendant's violence and criminal history, the relationship of the developmental disability to the charged offense, and the current charged offense, and any other relevant information, and the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community, the court shall determine if the defendant shall be diverted under either dual or single agency supervision, and referred for habilitation or rehabilitation diversion pursuant to this chapter. If the court does not deem the defendant a person who would benefit by diversion at the time of the hearing, the suspended criminal proceedings may be reinstituted, or any other disposition as authorized by law may be made, and diversion may be ordered at a later date." (§ 1001.23, subd. (b).)

11.

A trial court's denial of diversion under section 1001.20 et seq. is reviewed for abuse of discretion.  (*People v. K.D.* (2024) 110 Cal.App.5th 1, 17 (*K.D.*).)  Similar to mental health diversion, a trial court abuses its discretion when its determination exceeds the bounds of reason or is arbitrary or irrational, or when its express or implied factual findings are not supported by substantial evidence.  (*Id.* at p. 18.)

## B.  Discussion

On February 5, 2024, Vidrio made an oral motion requesting regional center diversion pursuant to sections 1001.20 through 1001.34.  On March 14, 2024, he filed a report from a regional center residential home indicating he had been accepted for placement, and that he had agreed to no unsupervised time, and to obey all laws and follow all house rules.  The letter indicated Vidrio had been found eligible for services since February 17, 1998.

The regional center in this case recommended dual-diversion with the participation of Fresno County Probation to monitor Vidrio's progress in the community for placement.  The People recommended against regional center diversion due to Vidrio's history of violence, his criminal history, the relationship between the developmental disability and the charged offense, and the facts of the charged offense.  In particular, the People argued that a nexus between Vidrio's diagnosis of a learning disability, and the charged offense of assault by means likely to produce great bodily injury with a great bodily injury and gang enhancement, had not been demonstrated.

On March 14, 2024, the trial court denied Vidrio's request for regional center diversion with the following finding.

> "The problem that the Court has with diverting this case…is the level of violence and the criminal history that's demonstrated here.  According to the People's opposition, you were on parole at the time that this occurred for a prior violent offense, and the Court's understanding is that the victim in this case suffered severe injuries, including facial fractures and a concussion.

It's this Court's understanding that the Court is operating under the facts that during this violent attack that the victim became unconscious and started convulsing at the scene. That level of violence, sir, the Court does not find that there is a connection between the diagnosis here that's been presented by the CVRC and treating physicians that have treated the defendant in this case, and the [c]ourt is taking judicial notice of its file. I do note prior 1368 reports as well as prior motions filed on behalf of Mr. Vidrio.

The Court does not find under the circumstances that given the extent of the defendant's history, including violence as well as the violent nature of the act, that the matter is appropriate for CVRC diversion. The defendant's motion to have this matter diverted pursuant to Penal Code section 1001.21 and .22 is denied."

In *K.D.*, the defendant got into a car while the car's owner stepped away for a moment and drove away with the car owner's one-year-old son in the backseat. (*K.D., supra,* 110 Cal.App.5th at p. 8.) Police apprehended the defendant about two miles away, and the child was unharmed. (*Ibid.*) The defendant was charged with kidnapping and vehicle theft and was initially found incompetent to stand trial. (*Id.* at p. 9.) The defendant was returned to competency and criminal proceedings were reinstated, following which the defendant requested dual-agency diversion pursuant to section 1001.22. (*Id.* at p. 11.)

The defendant was diagnosed with a moderate intellectual disability and an evaluation placed her I.Q. at 55. (*K.D., supra,* 110 Cal.App.5th at p. 9.) The defendant also had an extensive criminal history of seventeen misdemeanor convictions and one felony, however the convictions were for drug and paraphernalia possession, being under the influence of a controlled substance, disorderly conduct, and providing false identification. (*Id.* at p. 12.) The defendant's felony conviction was for a violation of section 496d, a theft offense. (*Ibid.*) In her statement to the probation officer, the

defendant stated she did not know there was a baby in the backseat and she had taken the car because she thought it was her chance to return home. (*Id.* at p. 13.)

The trial court denied diversion, finding that while the defendant was eligible for regional center services, and she did not pose an unreasonable risk as defined by section 1170.18, the charged offense was "an extremely serious offense" and the developmental disability was not reasonably related to the charged offense, therefore the defendant would not benefit from being placed on diversion at that time. (*K.D., supra,* 110 Cal.App.5th at p. 21.) The appellate court disagreed. The court noted that the record did not support the trial court's finding that the defendant's disability had *no* relation to the charged offense. (*Id.* at p. 26, emphasis added.) Likewise, once the trial court found the defendant eligible and would not present an unreasonable risk to public safety, it failed to assess the only relevant question "whether, in light of the purposes of the disability diversion scheme, defendant would benefit from diversion-related treatment." (*Id.* at p. 27.)

In *K.D.*, the defendant's criminal history, while extensive, did not consist of violent conduct, and the charged offense, while serious, did not result in physical injury to the victims. In this case, Vidrio has a history of violent, criminal conduct and the facts of the charged offense are exceptionally violent. Likewise, as noted by the trial court, Vidrio committed this violent assault while on probation for his prior conviction for assault with a deadly weapon. His behavior constitutes substantial evidence supporting the trial court's finding that he is not eligible for diversion due to presenting an unreasonable risk to public safety; therefore, the trial court did not abuse its discretion denying regional center diversion.

### III. The Trial Court Did Not Abuse Its Discretion Denying Vidrio's *Romero* Motion.

"When a defendant has entered a plea of guilty or no contest, the bases for an appeal from the resulting conviction are limited and section 1237.5 serves to prevent

frivolous appeals." (*People v. Johnson* (2009) 47 Cal.4th 668, 677.) "Even when a defendant purports to challenge only the sentence imposed, a certificate of probable cause is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement." (*Id.* at p. 678.) "Such an agreed-upon aspect of the sentence cannot be challenged without undermining the plea agreement itself. Consequently, an attack upon an integral part of the plea agreement 'is, in substance, a challenge to the validity of the plea[.]' " (*Id.* at pp. 678–679.)

However, "where the terms of the plea agreement leave issues open for resolution by litigation, appellate claims arising within the scope of that litigation do not attack the validity of the plea, and thus do not require a certificate of probable cause." (*People v. Buttram* (2003) 30 Cal.4th 773, 783.) "When the parties negotiate a *maximum* sentence, they obviously mean something different than if they had bargained for a *specific* or *recommended* sentence. By agreeing only to a maximum sentence, the parties leave unresolved between themselves the appropriate sentence within the maximum. That issue is left to the normal sentencing discretion of the trial court, to be exercised in a separate proceeding." (*Id.* at p. 785.)

In this case, although Vidrio's certificate of probable cause was denied as to the trial court's denial of his *Romero* motion, he entered his plea in return for a negotiated *maximum* sentence, not a specific or recommended sentence. Thus, the question of the appropriate sentence remained unresolved following his plea, was left to the normal sentencing discretion of the court, and did not attack the validity of the plea requiring a certificate of probable cause. (*Buttram, supra,* 30 Cal.4th at p. 786.)

"Under section 1385, subdivision (a), a 'judge ... may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.' 'In *Romero*, we held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in

15.

furtherance of justice" pursuant to ... section 1385(a).' " (*People v. Carmony* (2004) 33 Cal.4th 367, 373.)  A trial court's failure to dismiss or strike a prior serious and/or violent felony conviction allegation under section 1385 is reviewed for abuse of discretion.  (*Id.* at p. 376.)

The trial court did not abuse its discretion denying Vidrio's request to strike his prior serious felony conviction.  He argues the trial court disregarded key mitigating factors when denying his request, including his diagnosed developmental disability or his mental health, and did not fully weigh all relevant information when exercising its discretion.

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.'  [Citation.]  To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*People v. Carmony, supra,* 33 Cal.4th at pp. 375–376.)

In this case, the strike conviction had occurred only six years prior, involved violent conduct similar to the charged offense, and Vidrio was on parole for the prior strike conviction when he committed the charged offense.  Thus, regardless of his developmental disability, it was not an abuse of discretion for the trial court to find he did not fall outside the Three Strikes scheme and to deny his request.

## **DISPOSITION**

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


DE SANTOS, J.

17.